UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Colonel Robert Frank, et al,<br><br>    Plaintiffs<br><br>v.<br><br>City of Henderson, et al.,<br><br>    Defendants | 2:12-cv-01988-JAD-NJK<br><br>**Order Granting Motion for Summary Judgment and Closing Case**<br><br>[ECF No. 59] |

After plaintiffs Colonel Robert Frank and Tim Stebbins lodged a complaint with the Henderson Police Department against two of the executive board members of their homeowners' association, the City of Henderson charged Frank and Stebbins with falsely reporting a crime. When the charges were dismissed two years later, they sued the City and investigating officer Sergeant Jeffrey Farley under § 1983 and a handful of state-law theories.[1] After dismissals, plaintiffs' remaining claims are (1) malicious prosecution under § 1983 (against Farley) and (2) malicious prosecution under state law (against Farley and the City under a theory of respondeat superior).[2]

Defendants now move for summary judgment, arguing that plaintiffs' claims fail because there is no evidence that Farley lacked probable cause to seek their arrests or that he did so with malice or to deprive them of a constitutional right.[3] Because I find that Farley had probable cause to submit the affidavits for plaintiffs' arrest and that the record does not reflect that he otherwise engaged in wrongful conduct to procure their prosecutions, defendants are entitled to summary judgment. I therefore grant defendants' motion and direct the Clerk of Court to enter judgment for defendants and against plaintiffs and to close this case.[4]

---

[1] ECF No. 39

[2] ECF No. 58.

[3] *See* ECF No. 59.

[4] I find this motion suitable for disposition without oral argument. L.R. 78-2.

# Background

**A.    Plaintiffs' police report and the resulting investigation of the HOA board members**

Plaintiffs belonged to the Sun City Anthem Community Association (HOA), a group of homeowners in a planned, age-restricted community in Henderson, Nevada. When the HOA's President (R. Berman) and Secretary (R. Cooper) circulated a resolution purporting to adopt a tax-planning approach without prior community approval—an approach that plaintiffs believed to be a "special type of forgery" under Nevada law—plaintiffs reported the board members' action to the Henderson Police Department.[5] The challenged resolution provided that the excess membership dues from 2007 would be rolled over to offset 2008 member dues "as provided by IRS Revenue Ruling 70-604."[6]

Plaintiffs filed a police report in which they alleged that Berman and Cooper violated NRS § 205.095, which makes it a felony to "[m]ake any false entry in any public record or account."[7] Plaintiffs alleged that, by signing the document purporting to adopt the resolution, Berman and Cooper committed forgery because (1) the board lacked the authority to adopt the resolution without a community vote and (2) the board had no intention of returning the surplus funds as described.[8]

Defendant Farley, a fraud sergeant in the Henderson Police Department's investigative services division, was assigned to investigate plaintiffs' allegations.[9] Farley met with plaintiffs, Berman and Cooper, other members of the HOA board, and legal counsel for the HOA and reviewed the challenged resolution, the HOA's 2007 tax return, the HOA's bylaws, and Nevada law governing HOA authority.[10] He ultimately concluded not only that the allegations against Berman and Cooper were unfounded, but that there was probable cause to believe that plaintiffs deliberately made false

---

[5] ECF No. 59-1.

[6] *Id.* at 8.

[7] NEV. REV. STAT. § 205.095(1).

[8] ECF No. 59-1 at 6.

[9] ECF No. 59-2 at 2, ¶ 2.

[10] *Id.* at 3.

allegations against these board members to cause the investigation.[11]

**B.     Farley's affidavits for plaintiffs' arrests**

In his sworn affidavits for warrants for plaintiffs' arrests, Farley details the allegations that plaintiffs made against Berman and Cooper and recounts that plaintiffs claimed that they performed dozens of hours of personal research and consulted with specialists before reporting the alleged crime.[12] He explains that he concluded that Berman and Cooper had not committed forgery because he believed that the board had authority to adopt the resolution without a membership vote and that the funds had been returned to the members as promised—contrary to plaintiffs' theory. And he explains how, in the course of that investigation, he concluded that plaintiffs knowingly falsely asserted that the funds had not been returned despite knowing that they had been and that Frank also intentionally misrepresented the contents of a tax memorandum that he gave to Farley.[13] Based on these facts, Farley requested warrants for plaintiffs' arrest for false reporting of crimes under NRS § 207.280.

**C.     The criminal proceedings against plaintiffs**

On February 4, 2010, the Henderson City Attorney filed criminal charges against plaintiffs;[14] the Henderson Municipal Court issued warrants for their arrest five days later,[15] and the police department notified plaintiffs that warrants had issued.[16] The next day, plaintiffs voluntarily appeared at the Henderson Detention Center, where they were booked, photographed, fingerprinted, and cuffed for several hours before they were allowed to post bail and leave.[17]

---

[11] *Id.* at 3, 6.

[12] ECF No. 62-6 at 3, 6.

[13] *See generally* ECF No. 62-6.

[14] ECF No. 59-3 at 4.

[15] ECF No. 59-5 at 2.

[16] ECF No. 62-1 at 16–17; ECF No. 62-2 at 10.

[17] ECF No. 62-1 at 17–18; ECF No. 62-2 at 9–11.

Plaintiffs promptly moved to dismiss the criminal charges against them, arguing that they had probable cause to file their report against Berman and Cooper;[18] the Henderson Municipal Court judge denied the motion.[19] In January 2011, plaintiffs successfully moved to recuse the City of Henderson City Attorney's Office and the Henderson Municipal Court bench from their criminal cases because one of the HOA board members also worked as an alternate judge for the City.[20] The municipal-court judge ordered the District Attorney's office to appoint a special prosecuting attorney and the municipal court to appoint a judge from another jurisdiction to eliminate the potential conflict.[21]

Meanwhile, in late 2010, the IRS determined during a field audit that the 2007 surplus funds were not refunded or applied against the 2008 membership dues and were therefore taxable income of the HOA.[22] Plaintiffs submit only the IRS auditor's Form 886-A explanation of items, so it is unclear whether the HOA challenged the IRS's proposed adjustments or whether the HOA ultimately paid the proposed additional tax liability or any tax penalty for the accumulated funds.

In March of 2011, a special prosecutor and special judge were appointed to the cases, and the cases were stayed for 60 days so that all discovery could be delivered and the special prosecutor could assess their viability.[23] The special prosecutor elected to move the cases forward.[24] After discovery closed in July of 2011, plaintiffs filed a second motion to dismiss the charges, arguing that there was not probable cause to support them. The newly appointed judge denied the dismissal motion because the "issue [could not] be resolved prior to or without hearing evidence presented at

---

[18] ECF No. 59-7.

[19] ECF No. 59-5 at 3.

[20] ECF No. 59-4.

[21] *Id.* at 7.

[22] ECF No. 62-7 at 5.

[23] ECF No. 59-5 at 7.

[24] ECF No. 59-6 at 3.

trial."[25]

On March 15, 2012, the special prosecutor voluntarily dismissed the charges against plaintiffs without prejudice.[26] In her sworn affidavit submitted in support of the defendants' summary-judgment motion, the special prosecutor explains that when she was initially assigned to the case in March of 2011, she independently reviewed the charges and determined that they were supported by probable cause.[27] She further explains that she continues to believe that probable cause exists but that, in light of the "volume and complexity of the documentary evidence in the cases," she was "not sure that the evidence would establish the elements . . . beyond a reasonable doubt."[28] Having "considered the likelihood of success on the merits in conjunction with the anticipated significant costs" of prosecution, she "determined that the cases should be dismissed."[29]

**D.  This lawsuit**

Eight months after the criminal charges against them were dropped, plaintiffs sued the City of Henderson, Farley, and Henderson Police Chief Jutta Chambers under 42 U.S.C. § 1983 and a handful of state-law theories.[30] After dismissals, plaintiffs' remaining claims are (1) malicious prosecution under § 1983 against Farley[31] and (2) malicious prosecution under Nevada law against Farley and the City (under a theory of respondeat superior).[32]

---

[25] *Id.*

[26] *See* ECF No. 62-9.

[27] ECF No. 59-6 at 3.

[28] *Id.* at 4.

[29] *Id.*

[30] ECF No. 1.

[31] I dismissed plaintiffs' § 1983 claim against the City because there is no respondeat superior liability under § 1983 and plaintiffs failed to sufficiently plead that the alleged violation was caused by a custom or policy of the City. ECF No. 58 at 8–9 (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 692 (1978)). Plaintiffs did not name Chambers as a defendant in their amended complaint. ECF No. 39.

[32] ECF No. 58.

Defendants now move for summary judgment, arguing that plaintiffs lack evidence to show that Farley caused their prosecution without probable cause to believe that they had committed a crime and that he did so with malice or for the purpose of denying them a constitutional right. Defendants also contend that summary judgment is appropriate because (1) plaintiffs should be collaterally estopped from re-litigating whether there was probable cause for their arrests, (2) plaintiffs' federal malicious-prosecution claim fails against Farley based on qualified immunity,[33] and (3) both of plaintiff Stebbins's malicious-prosecution claims fail because all records pertaining to his criminal prosecution have been sealed.[34]

## Discussion

### A.    Summary-judgment standards

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[35]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[36] If reasonable minds could differ on the material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[37]

If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[38] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific

---

[33] ECF No. 59 at 28–29.

[34] *Id.* at 17.

[35] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[36] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[37] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[38] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[39] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[40]

**B.     Malicious prosecution claims under Nevada state law and 42 U.S.C. § 1983**

To prevail on a claim for malicious prosecution under Nevada law, plaintiffs must show (1) that the defendants lacked probable cause to initiate the prosecution, (2) malice, (3) the prior criminal proceedings were terminated in their favor, and (4) the plaintiffs suffered damages.[41]  A § 1983 malicious-prosecution claim requires proof of a state-law malicious-prosecution claim plus the additional element that the defendants prosecuted plaintiffs with the intent to deprive them of a constitutional right.[42]

A plaintiff may bring a malicious-prosecution claim not only against the prosecutor but also against police officers and investigators who were instrumental in initiating the prosecution.[43] Generally, police officers "are not liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted."[44] But "[t]his presumption may be rebutted by showing, for example, that the prosecutor was pressured or caused by the investigating officer[] to act contrary to his independent judgment or that the investigating officer[] presented the prosecution with information known by [him] to be false."[45]

---

[39] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[40] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[41] *LaMantia v. Redisi*, 38 P.3d 877, 888 (Nev. 2002) (internal citation omitted).

[42] *Freeman v.City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (internal citations omitted).

[43] *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011); *LaMantia*, 38 P.3d at 879–80.

[44] *Blankenhorn v. Cty of Orange*, 485 F.3d 463, 482 (9th Cir. 2007) (internal quotation marks omitted).

[45] *Id.* (internal quotation marks omitted).

1  **C.  Defendants are entitled to summary judgment on liability for all damages suffered after charges were filed because the plaintiffs lack evidence to show that Farley wrongfully interfered with either prosecutor's independent judgment.**

Defendants argue that Farley had probable cause to seek plaintiffs' arrests for filing a false police report and that plaintiffs lack evidence to show that he acted with malice or interfered with the prosecutor's independent decision to file charges. Plaintiffs respond that a reasonable jury could find that Farley omitted exculpatory evidence from the affidavits by failing to include plaintiffs' "diligence and good-faith [belief] that a crime had been committed."[46]

Defendants are not liable for any damages plaintiffs suffered after the City Attorney's Office filed charges on February 4, 2010, because plaintiffs lack evidence to show that Farley wrongfully interfered with either prosecutor's independent judgment. Plaintiffs claim that Farley falsified the affidavits for their arrests by omitting exculpatory evidence: that they diligently investigated their allegations against Berman and Cooper and therefore had a good-faith belief that these board members had committed a crime.[47] Assuming this information is exculpatory, Farley details plaintiffs' purported investigative efforts in the affidavits. He explicitly states that plaintiffs reported performing "dozens of hours of personal research [and] analysis and consult[ing] with many local specialists in relevant areas of law enforcement"[48] before making their report.

Plaintiffs also contend that Farley "maliciously included irrelevant information concerning Mr. Frank's wife" in the affidavits.[49] The information that Farley included about Frank's wife is plainly relevant to the specific-intent element of false report of a crime. In the affidavits, Farley avers that he learned during his investigation that Frank had previously misrepresented documents to prompt an investigation of the board. He also viewed a webpage authored by plaintiffs and Frank's wife claiming that the board had violated Nevada state law and urging community members to elect "ethical directors." Farley explains that, coincidently, Frank's wife was then running for a seat on

---

[46] ECF No. 62 at 16.

[47] *Id.*

[48] ECF No. 62-2 at 2, 6.

[49] ECF No. 62-6 at 9.

the board of directors, so it "could be construed that this criminal report and subsequent investigation are being used to injure the reputation of standing board members."[50]

This information is certainly relevant to whether plaintiffs *knowingly* made false statements to prompt the investigation and cannot reasonably be characterized as maliciously included to falsely cause plaintiffs' arrest and prosecution. Because plaintiffs lack evidence to show that Farley engaged in any "wrongful or bad faith conduct that was actively instrumental in causing the initiation"[51] of their prosecution, Farley—and by extension, the City—cannot be held liable for any damages incurred after charges were filed by the prosecutor on February 4, 2010.

### D. Defendants are entitled to summary judgment for any remaining liability because the undisputed facts show that Farley had probable cause to submit the warrant affidavits.

Plaintiffs' claims for any damages incurred before charges were filed also fail as a matter of law because the undisputed facts show that Farley had probable cause to submit the affidavits for their arrest. Nevada law makes it a misdemeanor to (1) deliberately report that a crime has been committed (2) causing a criminal or internal investigation to be conducted (3) when the reporter knows that the report is false.[52] Probable cause exists "when police have reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution to believe that a crime has been committed by the person to be arrested."[53]

In the affidavits for plaintiffs' arrest, Farley identified two false assertions plaintiffs made to procure the investigation of Berman and Cooper: (1) that the HOA ignored expert advice to have the HOA members and the board of directors approve the resolution and (2) that the excess funds from 2007 were never returned or used to offset dues in 2008.[54] First, Farley explains that, in the course of the investigation, Frank produced a tax memorandum that a CPA had prepared for the board

---

[50] *Id.* at 9.

[51] *Awadby v. Cty of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

[52] NEV. REV. STAT. § 207.280.

[53] *State v. McKellips*, 49 P.3d 655, 660 (Nev. 2002).

[54] ECF No. 62-2 at 3.

1  addressing its options for making elections about what to do with excess assessments.[55]  Frank
2  presented the memo to Farley with a cover sheet titled "Expert Advice Was Sought, BUT
3  IGNORED" in which he claimed that the board had disregarded the CPA's advice by purporting to
4  adopt the resolution without a community vote.  Farley avers that this claim misrepresents the
5  contents of the memo, which actually supports the board's action.[56]  Having carefully read the cover
6  sheet and the memo, I agree with Farley's conclusion that Frank misrepresented the contents of the
7  memo in his cover sheet.  The substance of the memo is that the CPA ultimately agreed that the
8  board could approve the proposed tax-planning resolution pertaining to Revenue Ruling 70-604
9  without a community vote.[57]  Farley concludes that, as a board member, Frank knew that the board
10 sought expert advice and that that advice supported the board's position that it could adopt the
11 resolution to return the funds via an offset in membership dues without a membership vote.
12 Nonetheless, Frank presented the memo as evidence of Berman and Cooper's alleged forgery.[58]

13      Next, Farley explains that he concluded that plaintiffs' statements that the excess funds had
14 not been refunded as promised were false based on documentary evidence provided to him by the
15 HOA board members.[59]  He avers that, after plaintiffs provided him with financial documents too
16 general to establish that the excess assessments were not applied as stated, he met with several HOA
17 board members and their attorney to review additional financial documents to determine whether the
18 excess funds had been returned.[60]  During this meeting, Farley reviewed the HOA's 2007 tax return
19 and was informed that member dues were reduced by $100 during the final quarter of 2008, resulting
20 in a total reduction of approximately $700,000—a reduction he reasonably believed came from the

---

[55] *Id.*

[56] *Id.*

[57] *See* ECF No. 59-2 at 15.

[58] *Id.*

[59] ECF No. 62-6 at 4.

[60] ECF No. 62-6 at 8.

$665,856 excess collected in 2007.[61] The board members also provided Farley with an independent audit report verifying that the HOA's books and the documents they provided him were accurate.[62]

The Nevada Supreme Court has adopted the objective standard articulated by the California Supreme Court in *Sheldon Appel Co v. Albert & Oliker* for evaluating the want-of-probable-cause element in malicious-prosecution claims.[63] "Under this test, it is for the court to decide whether a reasonable attorney would have considered the prior action legally tenable—ignoring any subjective factors such as the attorney's expertise and belief."[64]

Applying this objective standard, I find that based on this record a reasonable attorney would have considered Farley's belief that probable cause existed when he submitted the affidavits for plaintiffs' arrests legally tenable. The facts and circumstances then known to Farley are more than "sufficient in themselves to warrant a person of reasonable caution to believe"[65] that plaintiffs made a false report of a crime. Indeed, the municipal-court judge who signed the warrants for plaintiffs' arrest and two prosecutors each independently determined that there was probable cause to support the charges. That the IRS may have later concluded that the excess funds from 2007 were not refunded to the homeowners in the next calendar year and were thus taxable income does not negate the existence of probable cause at the time Farley submitted the affidavits. And regardless of the IRS's ultimate conclusion about whether the excess funds were returned as promised (evidence I have not been provided with) Frank's representation that the CPA's tax memo supports his position that the resolution is void is still patently false.

The proffered affidavit of Sun City Anthem resident Forest Feherolf does not change my conclusion. Feherolf avers that in March of 2010—the month after plaintiffs' arrest—he advised

---

[61] *Id.*

[62] ECF No. 62-8 at 8.

[63] *Jordan v. Bailey*, 944 P.2d 828 (Nev. 1997) (citing *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 511 (Cal. 1989)).

[64] *Id.*

[65] *McKellips*, 49 P.3d at 660.

1   Farley that he was "in possession of documents [that] exonerated Mr. Frank and Mr. Stebbins of
2   criminal wrongdoing."[66]  Farley declined to accept the documents and told Feherolf that if he had
3   information pertaining to the case he should give it to plaintiffs' defense attorneys or to the court.[67]
4   Farley's refusal to accept these documents—documents that he apparently never even saw—after he
5   turned the case over to the prosecutor does not negate the existence of probable cause at the time he
6   filed his affidavits or show that any of the statements he made in those affidavits were knowingly
7   false.[68]  There is also no allegation that Farley intercepted these documents and then intentionally
8   concealed them from the prosecutor or the defense.  To the contrary, it appears that Farley directed
9   Feherolf to turn the documents over to the appropriate authorities at that stage in the investigation.
10          Because I find that the undisputed facts show that Farley had probable cause to arrest
11  plaintiffs and that he did not make knowingly false statements in the affidavits or otherwise engage
12  in wrongful conduct to procure or maintain plaintiffs' prosecutions, defendants are entitled to
13  summary judgment on all claims.[69]

---

[66] *See generally* ECF No. 62-8.

[67] *Id.*

[68] Notably, the affidavit does not identify these documents or make any attempt to explain how they were exculpatory.

[69] Because I find that defendants are entitled to summary judgment on this basis, I need not—and do not—reach defendants' remaining summary-judgment arguments.

**Conclusion**

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that **defendants' motion for summary judgment [ECF No. 59] is GRANTED.**

The Clerk of Court is instructed to enter judgment for defendants and against plaintiffs and CLOSE THIS CASE.

Dated: August 1, 2016.

_____
Jennifer A. Dorsey
United States District Judge